CHARLES TATE AND OTHERS, PLAINTIFFS IN ERROR, *v.* JOHN G. CARNEY AND OTHERS.

Under several acts of Congress the register and receiver of the land office were authorized to grant a certificate to every person who should appear to be entitled to land in the section of country east of the Mississippi river and west of the Perdido river.

Under these acts, Robert Yair received a certificate in 1824 for the land now in controversy.

In 1848, the register and receiver decided that Nancy Tate had settled upon this land at a very early day. They annulled the former certificate and granted an order of survey, by means of which a patent was issued in 1853 to the representatives of Nancy Tate. The patent reserves the right of Robert Yair.

The decision of the register and receiver upon this question of title is not conclusive. They have power only to decide how the lands confirmed shall be surveyed and located. They had no authority to overthrow the decision of the register and receiver that had been made more than twenty years before, which had been followed by possession, and as to which there had intervened the claims of *bona fide* purchasers.

THIS case was brought up from the Supreme Court of the State of Louisiana holding sessions for the eastern district of Louisiana, being issued under the twenty-fifth section of the Judiciary act.

The head note has given an outline of the case so that the reader can understand it; and the opinion of the court contains a full statement.

Tate was sued in the court below, and disclaimed title otherwise than as one of the heirs of Nancy Tate, whose other heirs then intervened.

Carney and the others claimed under Yair's title.

The Supreme Court of Louisiana rejected the claim of the heirs of Nancy Tate, who brought the case up to this court.

It was submitted on a printed argument by *Mr. Benjamin* for the plaintiffs in error, and argued by *Mr. Taylor* for the defendants.

Mr. Justice CAMPBELL delivered the opinion of the court.

This cause comes before this court by a writ of error to the Supreme Court of the State of Louisiana, under the 25th section of the Judiciary act of September, 1789. The defendant in error (Carney) commenced a suit in the District Court of the 8th judicial district of Louisiana, in which he asserted that he had purchased, in the year 1844, at the probate sale of the succession of Sarah Cohern, deceased, five hundred and sixty acres of land on Cool creek, in that district, and that Charles Tate had disturbed his possession and denied his title. He summoned Charles Tate to exhibit his claim to the land, and required the representatives of Sarah Cohern, deceased, to maintain the title they had warranted to him, or to refund the purchase money he had paid. The result of various proceedings in the District Court was the forming of an issue between the defendant in error and the plaintiffs in error relative to their respective rights in the said parcel of land. It is situated in the section of country east of the Mississippi river and the island of New Orleans, and west of the Perdido river, which was claimed by the United States under the treaty of Paris of 1803, for the cession of Louisiana, and which was adversely claimed and possessed by Spain as a portion of West Florida until 1812–'13. The act of Congress for ascertaining the titles and claims to lands in that part of Louisiana which lies east of the Mississippi river and island of New Orleans, approved 25th April, 1812, is the first of the series of acts that apply to this district. 2 Stat. at Large, 713. The 8th section requires the commissioners to be appointed under the act to collect and report to Congress, at their next session, a list of all the actual settlers on land in said districts, respectively, who have no

claims to land derived either from the French, British, or Spanish Governments, and the time at which such settlements were made. The reports made by the commissioners appointed under the act of 1812 were submitted to Congress, and are the subject of the act of the 3d March, 1819, for adjusting the claims to land, and establishing land offices in the district east of the island of New Orleans. 3 Stats. at Large, 528.

The third section of this act provides, "that every person whose claim is comprised in the lists or register of claims reported by the said commissioners, and the persons embraced in the list of actual settlers not having any written evidence of claim reported as aforesaid, shall, when it appears by the said reports or by the said lists that the land claimed or settled on had been actually inhabited or cultivated by such person or persons in whose right he claims, on or before the fifteenth of April, 1813, be entitled to a grant for the land so claimed or settled on as a donation; provided that not more than one tract shall be thus granted to any one person, and the same shall not contain more than six hundred and forty acres. By the 9th section of this act, the register and receiver of the land offices in that district were authorized to make additions to the list of settlers, noting the time of their settlement, and to report the same to Congress. These, with other reports, were disposed of in the supplementary act for adjusting land claims in that district, adopted 8th May, 1822. 3 Stats. at Large, 707. The third section of the act of 1822 is in the same language as the corresponding section in the act of 1819 before cited. The sixth section of this act requires the register and receiver to grant a certificate to every person who shall appear to be entitled to a tract of land under the third section of the act, setting forth the nature of the claim and the quantity allowed. In 1820, Robert Yair made proof in the land office that in the year 1805 he had settled upon a parcel of land in the district, and had occupied and cultivated it from that time until the date of his application and proof. His claim was reported to Congress, and in 1824 a certificate issued to him for that land, which is the land in controversy. Robert Yair continued to occupy the land until his death, in 1825 or 1826, when it passed

to his widow and heirs. The defendant in error (Carney) traces his title to these heirs. The claim of the plaintiffs in error is traced to Nancy Tate, their ancestress, who made a settlement in the same district in 1811, and whose claim was reported under the act of 1812, before cited.

In the year 1847, her heirs applied to the register and receiver of the land office in that district for an order of survey, in which application they represented that Nancy Tate was entitled to a section of land under the acts of Congress aforesaid; that she had settled upon public land in an adjoining section, forty-one; that John Tate was settled upon the same section; and that both could not have their complement of land, from their proximity, out of land contiguous to their settlement. But that there was vacant land to the east and northeast, not claimed by any person, sufficient to make up the quantity she had been entitled to, and prayed for the order, as one that could not injure any other person. The register and receiver caused a notice to be served on the defendant in error, to show cause why the order should not be granted. There is no evidence that he appeared on this notice.

In February, 1848, the register and receiver made a decision, in which they declared that Nancy Tate had settled upon this land; that they were satisfied that Robert Yair, at the time of the confirmation to him, was the holder of another donation for one thousand arpents, and that he was not entitled to this under the act of 1822, for that reason. They annulled the certificate that had been issued to him, and granted the order of survey as applied for. The survey was made to include this land, and a patent was issued in favor of the representatives of Nancy Tate in 1853. This patent describes the land as covered by the claim of Robert Yair, and releases the land, subject to any valid right, if such exists, in virtue of the confirmed claim of Robert Yair, or of any other person claiming from the United States, the French, British, or Spanish Governments. The Supreme Court of Louisiana have found from the testimony that Nancy Tate was not an occupant of this land, and that the settlement of Robert Yair and his representatives had been continuous for some forty years. The

question for the consideration of this court is, whether the decision of the register and receiver of the land office in favor of the plaintiffs in error is conclusive of the controversy. The Supreme Court decided that it was not, and we concur in that opinion.

In Doe *v.* Eslava, 9 How., 421, the defendant in error relied upon a decision of the register and receiver of a land office in the same district, with the same powers as were confirmed upon these, as conclusive in his favor. This court answered: "We do not consider that the act of May 8th, 1822, and that of the same date, which is connected with it, and referred to as *in pari materia*, for a guide, meant to confer the adjudication of titles of land on registers and receivers. Sometimes, as in the case of pre-emptioners, they are authorized to decide on the fact of cultivation or not; and here, from the words used, no less than their character, they must be considered as empowered to decide on the true location of grants or confirmations, but not on the legal and often complicated questions of title, involving, also, the whole interests of the parties, and yet allowing no appeal or revision elsewhere. The power given to them is, to decide only how the lands confirmed shall be located and surveyed. The further power to decide on conflicting and interfering claims should apply only to the location and survey of such claims, which are the subject-matter of their cognizance; and on resorting to the reference made to the second act of Congress, that act appears also to relate to decisions on intrusions upon possessions and other kindred matters."

The case of Cousin *v.* Blanc, 19 How., 203, involved a question of the effect and binding operation of a decision of the register and receiver of the land office upon a location and survey of a claim confirmed under the act of 1822, and refers to the act of the 3d March, 1831, as showing that the decisions of the register and receiver were not to be considered as precluding a legal investigation and decision by the proper judicial tribunals between the parties to interfering claims. 4 Stat. at Large, 492.

It furnishes no support of the argument that the decision

of the register and receiver in such a case as this is conclusive of the title. There is no dispute in this case upon the subject of the location of the claim of Yair. The whole case shows that it had been identified and was actually possessed by Yair and his heirs. The patent of the defendants in error acknowledges that its location had been made, and that the new survey for the claim of Mrs. Tate covered this location. The decision of the register and receiver does not proceed upon any assumption of a conflict of location, but of a denial of the right of Yair. They had no authority to overthrow the decision of the register and receiver that had been made more than twenty years before, which had been followed by possession, and as to which there had intervened the claims of bona fide purchasers. It further appears that Mrs. Tate did not settle upon this parcel of land, and that the decision of the register and receiver in her favor is not supported by testimony. The judgment of the Supreme Court of Louisiana does not contain any error within the scope of the revising jurisdiction of this court, and it is consequently affirmed.