## EASTERN CHEROKEES *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 234.   Argued April 30, May 1, 1912.—Decided June 7, 1912.

In rendering a judgment for the Cherokee Nation in its suit against the United States, on the item claimed by, and over the objection of, the Eastern Cherokees, the Court of Claims recognized the Nation as the titular claimant authorized to prosecute the item to recovery, although for the ultimate benefit of the Eastern Cherokees, and this court having affirmed the judgment, 202 U. S. 1, the question has been adjudicated.

Under the decree of the Court of Claims as affirmed by this court the attorneys for the Cherokee Nation are entitled to be paid their fees

on the amount of the recovery including the items recovered in the name of the Nation for the Eastern Cherokees.

After this court has reviewed the judgment of the Court of Claims and affirmed it, the Court of Claims, like any other court whose judgment has been reviewed by this court, must give effect to it and carry it into effect according to the mandate without variation or other further relief. *In re Sanford Fork & Tool Co.*, 160 U. S. 247.

45 Ct. Cl. 104, affirmed.

THE facts, which involve certain phases of the claims of the Cherokee Indians against the United States and the relative interests therein of the Cherokee Nation and the Eastern Cherokees, are stated in the opinion.

*Mr. Charles Poe* and *Mr. Samuel A. Putman* for appellants.

*Mr. Assistant Attorney General Thompson* for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The controversy here to be considered arises in this way: In recent years, there was litigated in the Court of Claims and this court a claim against the United States arising under treaties with the Cherokee Indians and consisting of four items, one of which, designated as item 2, was for $1,111,284.70, with interest at 5 per cent from June 12, 1838, to the date of payment. The litigation was conducted under § 68 of the act of July 1, 1902, 32 Stat. 725, 726, c. 1375, as construed and amplified by the act of March 3, 1903, 32 Stat. 982, 996, c. 994, and the parties were the Cherokee Nation, the Eastern Cherokees, and the United States. Most of the Eastern Cherokees were members of the Cherokee Nation, but some were not, as was the case with those who remained in North Caro-

lina and other adjacent States; and most of the members of the Nation were Eastern Cherokees, but some were not, as was the case with those who were known as Old Settlers. The principal questions in controversy in the litigation, so far as they are now material, were (a) whether there could be a recovery against the United States on item 2, (b) whether the recovery should be in the name of the Cherokee Nation or in that of the Eastern Cherokees, and (c) whether, if the recovery were in the name of the Cherokee Nation, it should be for the benefit of the members of the Nation, whether Eastern Cherokees or otherwise, or for the benefit of the Eastern Cherokees, whether members of the Nation or otherwise. These questions were all stoutly contested in both courts. As to the first the Cherokee Nation and Eastern Cherokees made common cause against the United States, and as to the other two they advanced opposing contentions. The jurisdictional acts, before mentioned, required that "both the Cherokee Nation and said Eastern Cherokees" be made parties to the suit, and provided that if the claim were sustained the judgment should be "in favor of the rightful claimant" and should determine, "as between the different claimants, to whom the judgment so rendered equitably belongs, either wholly or in part." The acts also provided that the Cherokee Nation should be represented by attorneys to be employed and compensated in the manner prescribed in Rev. Stat., §§ 2103–2106, and that the Eastern Cherokees should be represented by attorneys employed by them, whose compensation should be fixed by the Court of Claims upon the termination of the suit.

The litigation was started by the Cherokee Nation, which, on January 16, 1903, had entered into a contract, conformably to Rev. Stat., §§ 2103–2106, with the late Gustavus A. Finkelnburg and others, whereby the latter were to represent the Nation as its attorneys in the prose-

cution of the claim and were to receive, as compensation for their services, 5 per cent of the first $1,000,000, or part thereof, collected, and 2½ per cent of the amount collected over and above the first $1,000,000, such compensation to be, by the proper officers of the United States, deducted from the amount recovered and paid directly to such attorneys.

The Court of Claims held, and its decree was to the effect, that there should be a recovery against the United States on all the items of the claim; that the recovery on all should be in the name of the Cherokee Nation; and that the recovery on items 1, 3 and 4 should be for the benefit of the Nation, and on item 2 for the benefit of the Eastern Cherokees, whether members of the Nation or otherwise; that the proceeds of items 1, 3 and 4 should be paid or credited to the Nation, less the percentage thereof contracted by the Nation to be paid as counsel fees, and that the proceeds of item 2, "less such counsel fees as may be chargeable against the same under the provisions of the contract with the Cherokee Nation of January 16, 1903, and such other counsel fees and expenses as may be hereafter allowed by this court under the provisions of the act of March 3, 1903," should be paid to the Secretary of the Interior, to be by him distributed directly to the Eastern Cherokees, inclusive of a class spoken of as Western Cherokees. The concluding portion of the decree declared: "So much of any of the above-mentioned items or amounts as the Cherokee Nation shall have contracted to pay as counsel fees under and in accordance with the provisions of §§ 2103 and 2106, both inclusive, of the Revised Statutes of the United States, and so much of the amount shown in item numbered two (2) as this court hereafter by appropriate order or decree shall allow for counsel fees and expenses under the provisions of the act of March 3, 1903, above referred to, shall be paid by the Secretary of the Treasury to the persons entitled to re-

ceive the same upon the making of an appropriation by Congress to pay this judgment. The allowance of fees and expenses by this court under said act of March 3, 1903, is reserved until the coming in of the mandate of the Supreme Court of the United States." 40 Ct. Cl. 252, 363.

From that decree the parties severally appealed to this court, the United States complaining of the recovery against it on item 2, the Cherokee Nation claiming that the recovery on that item ought not to have been declared to be for the benefit of the Eastern Cherokees, and the latter insisting (a) that the recovery on that item should have been in their name, and not in that of the Nation, (b) that the Western Cherokees, so called, ought not to have been included among those who were to participate in the per capita distribution, and (c) that "the court erred in charging the said fund of $1,111,284.70 and interest, to be realized from its said judgment or decree, with the fees of the attorneys for the Cherokee Nation." This court overruled all objections to the decree, save the one relating to the inclusion of the Western Cherokees, and, after directing that the provision for the per capita distribution be so modified as to confine it to the Eastern Cherokees, whether east or west of the Mississippi, exclusive of the Old Settlers, affirmed the decree, with that modification. 202 U. S. 101.

In passing upon the question, whether the recovery on item 2 was in the name of the rightful claimant, this court said (p. 130): "The Cherokee Nation, as such, had no interest in the claim, but officially represented the Eastern Cherokees." And again (p. 130): "We concur with the Court of Claims in the wisdom of rendering judgment in favor of the Cherokee Nation, subject to the limitation that the amount thereof should be paid to the Secretary of the Interior to be distributed directly to the parties entitled to it."

In disposing of the insistence that the proceeds arising

from that item ought not to have been charged with any fee for the attorneys for the Cherokee Nation, this court said (p. 131): "In view of the language of the jurisdictional acts of 1902 and 1903 in respect of the Cherokee Nation, we are not disposed to interfere with the Court of Claims in the allowance of fees and costs." And then, after noticing the arguments advanced by counsel for the Eastern Cherokees in support of a contrary conclusion, which were based upon the fact, among others, that the Nation had asserted a right to collect that item, not for the benefit of the Eastern Cherokees, but for the benefit of its members, whether Eastern Cherokees or otherwise, the court concluded the consideration of that insistence by saying (p. 131): "Nevertheless, taking the entire record together, the various treaties, and acts of Congress, and of the Cherokee Council, and the language of the jurisdictional acts of 1902 and 1903, we leave the decree as it is in respect to counsel fees and costs."

On receipt of the mandate the Court of Claims modified its original decree so as to conform to the direction in respect of the persons who should participate in the per capita distribution, and, in pursuance of the reservation made before, entered a supplemental decree fixing the compensation of the attorneys for the Eastern Cherokees at 15 per cent of the amount of item 2, including interest. Thereafter Congress made an appropriation to pay the original decree as modified, 34 Stat. 634, 664, c. 3912, and the accounting officers of the Treasury computed the interest due on each item, thereby ascertaining that item 2 amounted to almost $5,000,000. Finkelnburg and his associates, the attorneys for the Cherokee Nation, then presented to the Acting Commissioner of Indian Affairs a sworn statement of their services under the contract of January 16, 1903, conformably to the requirements of Rev. Stat. § 2104, upon which statement that officer and the Acting Secretary of the Interior determined and certi-

fied that such attorneys had fully complied with the con-
tract and were entitled to the compensation therein pro-
vided, including the stipulated percentage of the amount
recovered on item 2; and, upon the presentation of that
certificate, the officers of the Treasury Department paid to
such attorneys, out of the moneys applicable to the several
items, the percentage named in the contract and deducted
the same from the proceeds of the several items, the
amount so deducted from item 2 being $147,527.01. The
certification and payment, in so far as they affected that
item, were made over the objection and protest of the
Eastern Cherokees, who insisted at the time that no fees
or compensation for the attorneys for the Cherokee Na-
tion lawfully could be paid out of, or charged against, the
moneys arising therefrom.

Shortly thereafter the Eastern Cherokees filed in the
Court of Claims, in the original cause, a supplemental
petition wherein they challenged (a) the right of the at-
torneys for the Cherokee Nation to receive any fees or
compensation out of the moneys recovered on item 2, and
(b) the authority of the officers of the Treasury Depart-
ment to make any payment or deduction therefrom by
reason of the contract between the Nation and its attor-
neys, and alleged, in substance, that the decree furnished
no warrant for any such payment or deduction; that the
jurisdictional acts had not conferred upon the court of
claims any power to hear or determine any question per-
taining to the fees of the attorneys for the Nation; and
that throughout the litigation the Nation's attorneys had
contended that the amount due on item 2 should be
awarded and paid to the Nation for its own benefit, to
the exclusion of the Eastern Cherokees, save as most of
them might as members of it be benefited indirectly. The
prayer of the petition was that the court would pass a
further decree "construing and enforcing its former de-
crees" in such manner that the entire proceeds of item 2,

less the fees and expenses theretofore or thereafter allowed by the court to the attorneys for the Eastern Cherokees, would be distributed as before directed, but without any payment therefrom to the attorneys for the Cherokee Nation or any deduction by reason of any such payment. After a hearing on the petition, the Court of Claims entered a decree dismissing it for the reasons assigned in the following excerpts from the opinion of that court, delivered by Chief Justice Peelle (45 Ct. Cl. 104, 130, 131):

"The litigation was over a fund arising from treaty stipulations supposed to be in the Treasury in trust for the parties entitled thereto. Surely the fund which was the stake in controversy should bear the expense, and such was the conclusion of this court. . . . The decree clearly recognized the distinction between the fees authorized by the separate acts. That is to say, the fees to be paid to the attorneys for the Cherokee Nation under the first act were to be governed by the contract made in accordance therewith, while under the second act the court was authorized to fix the fees of the attorneys for the Eastern Cherokees. . . . It was not until after the payment of the money under said contract that the Eastern Cherokees filed their supplemental petition herein praying the court to so construe its decree as to provide that the sum of $1,111,284.70 [with interest] should not be chargeable with the fees of the attorneys of the Cherokee Nation. But independently of their delay, such construction would not only be contrary to the language of the decree, but would, in effect, be changing the decree after its affirmance by the Supreme Court, and, too, after the contention here was presented there and denied. . . The Cherokee Nation was the proper party to the suit under both jurisdictional acts, and it had contracted to pay its attorneys, with the approval of the Secretary of the Interior, in strict accordance with the law, all of which was recognized by the court and sanctioned and provided

for in its decree; and the decree, in respect to the payment of said fees, having been affirmed and executed, the court is not at liberty to modify the decree or to construe it contrary to the clear import of the language used."

It was from this last decree that the present appeal was taken.

We pass other questions discussed in the opinion of the Court of Claims and elaborately argued by counsel, and come directly to consider whether further controversy over the matter presented by the supplemental petition was foreclosed by the original decree and the proceedings had in this court on the prior appeal, because, if it was, that alone requires that the action of the Court of Claims in dismissing the petition be affirmed.

By rendering a decree on item 2 in favor of the Cherokee Nation, over the objection of the Eastern Cherokees, the Court of Claims necessarily recognized the Nation as the titular claimant and as authorized to prosecute the item to a recovery, even although the recovery was for the ultimate benefit of the Eastern Cherokees. The latter so understood the decree and accordingly repeated their objection on the prior appeal, but this court sustained the action of the Court of Claims, saying, as we have seen: "The Cherokee Nation, as such, had no interest in the claim, but officially represented the Eastern Cherokees." Of course, that was an adjudication of the controverted question whether, in view of the treaties and congressional enactments bearing on the subject and of the attitude of the Cherokee Nation, the recovery should be in its name or in that of the Eastern Cherokees.

When the Court of Claims determined that question in favor of the Cherokee Nation, and also that the recovery should be for the benefit of the Eastern Cherokees, the question naturally arose, whether the attorneys for the Nation should be paid out of the proceeds. That matter was dealt with in two paragraphs of the decree. In one

it was directed, in respect of the moneys recovered on item 2, "that such counsel fees as may be chargeable against the same under the provisions of the contract" between the Cherokee Nation and its attorneys should be deducted in advance of the distribution among the Eastern Cherokees, and in the other that "so much of any" item on which recovery was had "as the Cherokee Nation shall have contracted to pay as counsel fees" under Rev. Stat. §§ 2103–2106 should be paid by the Secretary of the Treasury to the attorneys entitled thereto, upon the making of an appropriation by Congress to pay the decree. In this there was a plain recognition of the services rendered by the Nation's attorneys in prosecuting item 2 and of their right to be compensated out of the moneys recovered, the amount of the compensation to be as provided in their contract. The Eastern Cherokees so understood the decree at the time, and on the prior appeal challenged it as unwarrantably charging a fund recovered for their benefit with fees for the Nation's attorneys. This court, as is manifest from its opinion, construed the decree as did the Eastern Cherokees, and affirmed it with that construction. And, while nothing was said about the power of the Court of Claims to provide for the payment of the Nation's attorneys out of the moneys recovered, the implication of the opinion was that the power existed; and, of course, the affirmance of the decree wherein the power was exercised was an affirmance of the power.

Thus it is apparent that the decree of the Court of Claims as affirmed by this court, determined every question bearing upon the right of the attorneys for the Cherokee Nation to have their fees for the prosecution of item 2 paid out of the proceeds thereof, save the single question of the amount of the fees. That was left to be determined by the terms of the contract and the certification contemplated by Rev. Stat. § 2104. It is not charged that the amount actually paid was not the true amount under

the terms of the contract or that it was not duly certified under § 2104, and so it does not appear that the payment was not in accordance with the decree as construed on the prior appeal.

What really was sought by the supplemental petition was a modification of the decree in a particular wherein it had been affirmed by this court. But the Court of Claims was without power to grant any such relief, for it, like any other court whose judgment or decree has been reviewed by this court, was bound to give effect to the rule stated in *In re Sanford Fork and Tool Co.*, 160 U. S. 247, 255:

"When a case has been once decided by this court on appeal, and remanded to the Circuit Court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The Circuit Court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded."

*Decree affirmed.*