IN RE APPLICATION OF THE PLAINFIELD-UNION WATER
COMPANY, FOR ADDITIONAL SUBSURFACE WATER
SUPPLY. (W. S. APPLICATION No. 734)

PLAINFIELD-UNION WATER COMPANY, PLAINTIFF (AP-
PLICANT) RESPONDENT, v. BOROUGH OF MOUNTAIN-
SIDE, DEFENDANT (OBJECTOR) APPELLANT.

Argued November 2, 1953—Decided January 11, 1954.

298

299

300

*Mr. Lionel P. Kristeller* argued the cause for the appellant Borough of Mountainside (*Mr. Jay F. Dailey,* attorney).

*Mr. William H. Speer* argued the cause for the respondent Plainfield-Union Water Company.

The opinion of the court was delivered by

HEHER, J. We remanded this cause for the correction of error in the proceedings eventuating in the challenged resolution adopted by the Water Policy and Supply Council on June 16, 1952, approving plans of the Plainfield-Union Water Company for securing an additional sub-surface water supply. It was found on the earlier appeal that evidentiary data supplied by the Council's engineering staff, not the subject of testimony adduced at a hearing on notice to the

parties in interest, and staff findings and conclusions thereon unsupported by evidence presented to the Council under the basic legal sanctions with an opportunity for rebuttal, were received and used by the Council in contravention of the essentials of procedural due process, and the Council's findings were deficient in their failure to disclose the considerations underlying the action taken. In short, it was pointed out that administrative action is of necessity judged by the grounds from which it proceeded according to the record, and the findings must reveal the basis of the discretionary administrative determination. *In re Plainfield-Union Water Co.*, 11 *N. J.* 382 (1953).

After the remission of the cause accordingly, the Council gave notice of a public hearing pursuant to the judgment, to be held April 20, 1953; and when the hearing opened, the Borough of Mountainside entered an objection in writing to the jurisdiction of the Council, in terms following: The mandate "does not require, authorize, order, or permit, any further public hearing," but rather limits further proceedings "to a full consideration of all legal proofs offered upon hearings concluded, the making of finding of facts and a final determination based thereon," and thus "there exists no authority or jurisdiction for the conduct of the proposed hearing." The objection was overruled; and the hearing proceeded. Counsel for the borough thereupon announced that he would "not participate in the proceedings," although he remained and did not strictly adhere to that resolve. The Council's engineer, George R. Shanklin, was sworn as a witness and examined in chief in verification of the factual contents of his report to the Council made following the original hearing and other pertinent matters within his knowledge. An opportunity for cross-examination was extended, but refused. Counsel for the borough repeated that he would "not participate in anywise in any public hearing," upon the ground that a "further public hearing" would "violate" the mandate. The hearing was concluded, and on May 18 ensuing the Council adopted a resolution embodying findings of fact establishing in its view the public need for

the proposed water diversion, and approving the company's plans to that end conditioned as provided in the original resolution. See 11 *N. J.* 382.

The borough's appeal to the Appellate Division of the Superior Court was certified here for decision on our own motion.

It is now maintained: (a) that this court's mandate "did not authorize or permit any further hearing" by the Council; (b) the proofs are insufficient to support the Council's "findings" and "determination"; and (c) the Council exceeded its "statutory authority," in that its *quasi*-judicial function under *R. S.* 13 :1B–50 "clearly excludes any privilege or right, while acting as the trier of the facts, to call its own witnesses, to take sides or to act with bias or prejudice," and in violation of that duty it acted "as a party" to the proceeding, and therefore the action taken is void.

## I.

Thus, we have at the outset the basic question of jurisdiction.

The filing of the notice of appeal invokes the jurisdiction of the appellate tribunal. *Williams v. White*, 98 *N. J. L.* 140 (*E. & A.* 1922). The rules of court provide for the taking of an appeal by notice served and filed as therein specified. *R. R.* 1 :2–8; 2 :2–5; 4 :88–8. And, by the same token, the appeal divests the lower court of jurisdiction save as reserved by statute or rule. See, *Ashby v. Yetter*, 78 *N. J. Eq.* 173 (*Ch.* 1911), and the collated cases; *Sobel v. Sobel*, 99 *N. J. Eq.* 707 (*Ch.* 1926), affirmed 100 *N. J. Eq.* 532 (*E. & A.* 1927); *Moore v. Splitdorf Electrical Co.*, 118 *N. J. Eq.* 311 (*E. & A.* 1935); *Whitfield v. Kern*, 125 *N. J. Eq.* 515 (*E. & A.* 1939). Jurisdiction is restored by the mandate of the appellate court, but not in derogation of the judgment of the appellate tribunal embodied therein. The lower tribunal's exercise of jurisdiction thereafter is *ex necessitate* conditioned by the terms of the judgment on

appeal; and so the Council here was bound by the judgment of this court and under a peremptory duty to carry it into execution according to the mandate.

The mandate is a judicial precept that must be enforced as written. Relief from its directions, even though manifestly erroneous, can be had only in the appellate court whose judgment it is. *Isserman v. Isserman,* 2 *N. J.* 1 (1949); *Oswald v. Seidler,* 138 *N. J. Eq.* 440 (*E. & A.* 1946); *Kurth v. Maier,* 134 *N. J. Eq.* 511 (*E. & A.* 1944); *Wemple v. B. F. Goodrich Co.,* 127 *N. J. Eq.* 333 (*E. & A.* 1940); *Briggs v. Pennsylvania R. Co.,* 334 *U. S.* 304, 68 *S. Ct.* 1039, 92 *L. Ed.* 1403 (1948). The subordination of the inferior tribunal is of the very essence of the appellate function; the mandate is the process directed to the execution of the appellate judgment, and is therefore a command to be obeyed. The reinvestiture of jurisdiction in the inferior tribunal is in consonance with that judgment, and qualified accordingly. The appellate judgment becomes the law of the case; and the mandate is the direction for conforming judicial action. *In re Sanford Fork & Tool Co.,* 160 *U. S.* 247, 16 *S. Ct.* 291, 40 *L. Ed.* 414 (1895). The duty is simply one of compliance with the precept. The governing principle is embodied in the rules of court. The mandate "shall merely provide that the judgment, order or determination appealed from or sought to be reviewed or enforced is affirmed, reversed or modified, and that the record shall be remitted to the court below to be there proceeded with in accordance with the rules and practice relating to that court, consistent with the opinion of the appellate court." *R. R.* 1:9–1; 2:9–1. But there was no departure here from the appellate command—no deviation from the principle and direction of the judgment comprised in the opinion of the court.

The original determination of the Council was assailed as a judgment reached in disregard of the essentials of procedural due process. Evidentiary matter had come in without the sanction of an oath and the opportunity for cross-examination and rebuttal. The corrective mechanism was necessarily a rehearing and redetermination conforming to

the fundamentals of a judicial hearing delineated in this court's opinion; and there was no injunction, express or implied, against the taking of evidence pertinent to the inquiry. This the Council was free to do, as if, when it still had jurisdiction of the subject matter, either prior to decision or thereafter before it had lost control of the proceeding, on its own motion or at the instance of a party in interest, it had undertaken a rehearing to receive new evidence in aid of the execution of the statutory policy. This court's precept did not forbid such an inquiry. Indeed, for basic deficiencies there was no review of the Council's action on the merits, but rather a remand of the cause for the correction of the error and the taking of new evidence under the sanctions inherent in due process, and determination accordingly.

The remand was made for "further proceedings" "consistent" with the opinion of this court; and this plainly means a rehearing of the issues as if the former hearing had not been had. To antithesize, consistency is the criterion of conforming conduct; inconsistency denotes the proscribed area of nonconformative action. A question put to rest by the mandate cannot be relitigated. But, absent a limitation of the rehearing to specific issues, the whole is to be heard anew in keeping with the principles of law set by the opinion of the appellate tribunal. This would seem to be sound logic and good law. *Protomastro v. Board of Adjustment of City of Hoboken,* 3 *N. J.* 494 (1950); *United States v. Morgan,* 307 *U. S.* 183, 59 *S. Ct.* 795, 83 *L. Ed.* 1211 (1939); *Briggs v. Pennsylvania R. Co.,* cited *supra; Federal Communications Commission v. Pottsville Broadcasting Co.,* 309 *U. S.* 134, 60 *S. Ct.* 437, 84 *L. Ed.* 656 (1940); *People of State of Illinois ex rel. Hunt v. Illinois Cent. R. Co.,* 184 *U. S.* 77, 22 *S. Ct.* 300, 46 *L. Ed.* 440 (1902); *Eastern Cherokees v. United States,* 225 *U. S.* 572, 32 *S. Ct.* 707, 56 *L. Ed.* 1212 (1912). The difference is between a remand with specific limitations and general directions for a rehearing. *Rogers v. Hill,* 289 *U. S.* 582, 53 *S. Ct.* 731, 77 *L. Ed.* 1385, 88

*A. L. R.* 744 (1933) ; *In re Sanford Fork & Tool Co.*, cited
*supra.* A remand may be made

"to permit further evidence to be taken or additional findings to
be made upon essential points. * * * The 'remand' does not
encroach upon administrative functions. It means simply that the
case is returned to the administrative body in order that it may
take further action in accordance with the applicable law. * * *
Such a remand does not dismiss or terminate the administrative pro-
ceeding. If findings are lacking which may properly be made upon
the evidence already received, the court does not require the evidence
to be reheard. * * * If further evidence is necessary and
available to supply the basis for findings on material points, that
evidence may be taken. * * * Whatever findings or order may
subsequently be made will be subject to challenge if not adequately
supported or the board has failed to act in accordance with the
statutory requirements." *Ford Motor Co. v. National Labor Re-
lations Board*, 305 *U. S.* 364, 59 *S. Ct.* 301, 83 *L. Ed.* 221 (1939).

Administrative determinations are subject to recon-
sideration and revision by the agency itself, and a rehearing
and the taking of new evidence to that end, so long as it
retains control of the proceeding and rights have not vested.
This is an inherent power, an incident of the administrative
jurisdiction for the furtherance of its essential authority,
but a function that in its very nature calls for sound judg-
ment and discretion. *Handlon v. Town of Belleville*, 4 *N. J.*
99, 106 (1950). The principle is exemplified in *Butte, A. &
P. R. Co. v. United States*, 290 *U. S.* 127, 54 *S. Ct.* 108,
78 *L. Ed.* 222 (1933) ; *West v. Standard Oil Co.*, 278 *U. S.*
200, 49 *S. Ct.* 138, 73 *L. Ed.* 265 (1929) ; *Louisville &
N. R. Co. v. Sloss-Sheffield Steel & Iron Co.*, 269 *U. S.* 217,
46 *S. Ct.* 73, 70 *L. Ed.* 242 (1925) ; *United States v. State
Investment Co.*, 264 *U. S.* 206, 44 *S. Ct.* 289, 68 *L. Ed.* 639
(1924) ; *Lane v. United States ex rel. Mickadiet*, 241 *U. S.*
201, 36 *S. Ct.* 599, 60 *L. Ed.* 956 (1916) ; *United States,
ex rel. Knight v. Lane*, 228 *U. S.* 6, 33 *S. Ct.* 407, 57 *L. Ed.*
709 (1913) ; *Tate v. Carney*, 24 *How.* 357, 16 *L. Ed.* 693
(1861). See *Wisconsin L. Rev.* (1942), *p.* 14. This basic
authority is, of course, subject to the qualifications laid down
by the mandate on judicial review. There was no such
conflict here.

## II.

But the insistence is that, even so, the evidence adduced before the Council is "insufficient to support its determination" and "does not support the Council's findings."

The argument is two-fold: (a) The report of the Council's engineer received in evidence "is predicated upon records, reports, studies and notes of others" whose "source is not produced," and not upon his "knowledge or expert opinion"; and (b) the evidence elicited from the engineer established that the respondent water company now has "available sources of water supply not being used, and as well a further continued source available from the surface supply of the Elizabethtown Water Company"; and hence there is not the public necessity for the action taken constituting the *sine qua non* under *R. S.* 58:1–19. It is said that there is no factual basis for certain of the Council's specific findings leading to the conclusion that the company's "existing sources of supply are insufficient to meet the demand." And it is suggested that the company's Greenbrook well field will safely yield an additional daily supply of 2,000,000 gallons of water, and waters are also to be had from the surface supply of the Elizabethtown Water Company; also, that there is no reasonable ground to believe that the company's present "purchase arrangement" cannot continue. The insistence is that the company "has within its own control sources of water supply sufficient to meet its needs," and that such is shown to be the case by "ample proof" and, indeed, by the engineer's own report.

In a word, the issue raised is whether the water company has adequate available sources of water.

 In view of counsel's refusal, although present, to take part in the hearing, and to interpose an objection to the testimony given by the Council's engineer, or to cross-examine him, in the face of the insistence that the denial of cross-examination invalidated the original determination, it ill becomes the borough now to assail the evidence as hearsay and wholly unworthy of consideration in resolving

the issue. But we have no occasion to pursue that point; the evidence of the engineer on this inquiry was not founded in hearsay, but was rather specialized opinion and judgment buttressed by personal knowledge of facts relevant to the issue of the public need for the new sources of water sought by respondent. And the testimony of the company's witness Haskew, also possessing experimental qualifications, is to the same effect. The skill to acquire accurate conceptions is deemed experiential capacity, *Wigmore on Evidence* (*3d ed.*), *section 555*; and there can be no doubt that these witnesses satisfied this test of knowledge essential to testimonial capacity. They possessed the required special and peculiar experience—the continual use of the faculties, the habit and practice of an occupation, special study, professional training, and the rest, which Professor Wigmore recounts as making for fitness to acquire knowledge upon a given subject. Neither the engineer nor the witness Haskew gave testimony beyond his own special experiential qualifications. The basic facts did not come in by hearsay. And there was no countervailing proof.

The proofs sustain the factual conclusion that the company's water sources are not equal to present demands; and the statutory policy of public necessity also encompasses provision for reasonably foreseeable future public needs. The borough offered no evidence whatever; it relies merely upon its own assessment of the engineer's testimony. As to the Greenbrook well field, the engineer had reference to an increase of the water supply "either by existing wells or by additional wells which could be developed." The alternative suggestions involved unfavorable economic, physical and mechanical factors. The engineer is by experience and training peculiarly qualified as to future requirements and the related problems; and this special knowledge is adducible as testimonially trustworthy. Compare *Baltimore American Insurance Co. of New York v. Pacos Mercantile Co.*, 122 *F.* 2d· 143 (*C. C. A.* 10 1941).

Thus, the findings of public need, now and in the future, are amply sustained by competent evidence; and

the remedy is peculiarly the province of the Council. The measures taken to serve the need are in no respect arbitrary or unreasonable, or an abuse of the statutory power; and, invoking the principle adverted to on the prior submission of the cause, we cannot in these circumstances substitute our judgment for the specialized judgment of the agency entrusted with the fulfillment of the legislative policy, for that would constitute the judicial exercise of the administrative function. *Schmidt v. Board of Adjustment of City of Newark*, 9 *N. J.* 405 (1952). Compare *Gray v. Powell*, 314 *U. S.* 402, 62 *S. Ct.* 326, 86 *L. Ed.* 301 (1941). There is a vital distinction, related to the constitutional separation of powers, between the functions of judicial and administrative tribunals. *Federal Communications Commission v. Pottsville Broadcasting Co.*, cited *supra*. Care is to be taken that there shall be no encroachment by one upon the other. The Council found, and upon adequate grounds, that the territory served by the company has had "a considerable growth in population and industry," thereby increasing the demand for water; that there is no security in the "purchase arrangement" with the adjacent water companies, and the proposed wells would supply the eastern portion of the company's domain where the need is "most acute," and "improve delivery pressures available for booster service in that area." And, as the Council also found, it is clear that the planned diversion will be "just and equitable" to all other municipalities and civil divisions of the State thereby affected; it will not "unduly injure public or private interests."

## III.

The chairman of the Council summoned its engineer to the witness stand and interrogated him concerning his findings, and the examination was then continued by the Deputy Attorney General Cook, the Department's legal advisor; and from this course of action it is deduced that at the commencement of the hearing the Council "had a preconceived opinion as to the engineer's opinion and recommendations," and

thereafter "dominated the proceeding in such a manner as to clearly establish bias and prejudice" and a "preconceived plan * * * to aid and establish the basis of a predetermined ruling later to be made in favor of the respondent."

This animadversion is utterly unfounded. The obvious effort of the Council to comply with the mandate of this court, and to provide the freedom of inquiry which the borough had sought, is tortured into a suggestion of bias and prejudice. There is no discernible reason why the Council should not, itself, thus search out the facts in the performance of its statutory duty. What was done here does not signify biased action, but rather the discharge of the responsibility laid upon the agency by the law. The Council has broad powers of inquiry. *Vide Federal Communications Commission v. Pottsville Broadcasting Co.*, cited *supra.*

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.