## UNITED STATES EX REL. KNIGHT v. LANE, SECRETARY OF THE INTERIOR.[1]

### IN ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 163. Argued March 5, 6, 1913.—Decided March 17, 1913.

Until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the Land Department. *Brown* v. *Hitchcock*, 173 U. S. 473.

Until the matter is closed by final action the proceedings of an officer of a department are as much open to review or reversal by himself or his successor as are the interlocutory decrees of a court open to review upon the final hearing. *New Orleans* v. *Paine*, 147 U. S. 261.

A decision of the Secretary of the Interior revoking his prior approval of an adjustment between contestants, one of whom is a minor, and which is not arbitrary or capricious, but given after a hearing and in the exercise of the discretion confided to him by law, cannot be reviewed, nor can he be compelled to retract it, by mandamus. *Ness* v. *Fisher*, 223 U. S. 683.

The power given by the act of July 1, 1902, providing for allotment of Cherokee lands in severalty, to the Secretary of the Interior to decide between contestants, is not exhausted by a decision approving a settlement and directing deeds to be submitted to him for approval. Such a decision is interlocutory and not final and power still remained to reconsider and revoke.

35 App. D. C. 429, affirmed.

THE facts, which involve the construction of the act of Congress allotting Cherokee lands in severalty and the power of the Secretary of the Interior thereunder to determine contests and to reconsider his decisions thereon, are stated in the opinion.

---

[1] Original docket title United States ex rel. Knight v. Richard A. Ballinger, Secretary of the Interior, subsequently changed to Same v. Walter L. Fisher, Secretary &c. and subsequently changed to Same v. Franklin K. Lane, Secretary &c.

*Mr. Frederic D. McKenney,* with whom *Mr. James W. Zeverly, Mr. James M. Givens* and *Mr. Richard Wm. Stoutz* were on the brief, for plaintiff in error:

The execution by the principal chief of the Cherokee Nation of the patent in favor of Knight, under the circumstances of this case, rendered the issuance of an allotment certificate unnecessary. The patent itself contained within its four corners all pertinent recitals of such a certificate and in addition the appropriate words of grant and conveyance necessary to vest in the patentee title to the lands described. The patent being at least equal in legal potency to and certainly of greater dignity than an allotment certificate, the execution and delivery of the former by the principal chief materially advanced the mutation of title to the lands described therein beyond the point usually indicated by the issuance of the latter. In the absence of fraud or mistake, and neither is shown to have had existence in these proceedings, the rights of the patentee in and to the land became fixed and vested, and thereafter the Secretary of the Interior had but the ministerial power and duty of effecting the recordation and delivery of the patent, "a duty which, within all the definitions, can be enforced by the writ of mandamus." *Ballinger* v. *Frost,* 216 U. S. 240.

As in *Frost's Case* so in the case at bar, the authorities especially and exclusively empowered by the pertinent acts of Congress had executed under the great seal of the Cherokee Nation a patent for the lands embraced therein to Knight.

As in *Frost's Case* so in the case at bar nothing remained to be done by the Secretary but the purely perfunctory and ministerial duty of noting his "approval" thereon and seeing that it was duly delivered to the patentee. See *Garfield* v. *Goldsby,* 211 U. S. 249; *Roberts* v. *United States,* 176 U. S. 221; *Noble* v. *Union River Logging Co.,* 147 U. S. 165; *Frasher* v. *O'Connor,* 115 U. S. 112; *Butter-*

*worth* v. *Hoe*, 112 U. S. 50; *United States* v. *Schurz*, 102 U. S. 378; *Barney* v. *Dolph*, 97 U. S. 652.

In view of the circumstances and particularly in view of the large sums of money paid to and remaining in the possession of the Commission to the Five Civilized Tribes for the benefit of the minor, and the other large sums expended upon the strength of the Secretary's decision, and his telegram of instructions in improving and developing the lands by erecting derricks and drilling for oil, the present case, while equally as strong in point of law as any one of the cases above cited, excels them in all that strength which equity and good faith add.

*Mr. Assistant Attorney General Cobb*, with whom *Mr. Solicitor General Bullitt* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This writ of error brings up for review a judgment of the Court of Appeals of the District of Columbia (35 App. D. C. 429) affirming a judgment of the Supreme Court of the District refusing a writ of mandamus commanding the Secretary of the Interior to deliver to the relator a patent for a tract of land claimed by the latter as a Cherokee allotment. The facts upon which the decision must turn are these:

On August 21, 1907, a parcel of allottable land containing 50 acres, in the Cherokee Nation, was selected as an allotment for Eva Waters, a minor Cherokee child belonging to the class whose rights to participate in the distribution and allotment of the tribal funds and lands were sustained in the recent decision in *Gritts* v. *Fisher*, 224 U. S. 640. A week later William Twist and the relator, Herman Knight, enrolled Cherokees, respectively selected the westerly 20 acres and the easterly 30 acres of the same

tract as allotments for themselves, and in furtherance of their selections instituted contests against that of Eva Waters. A hearing on Twist's contest resulted in a decision in his favor by the Commissioner to the Five Civilized Tribes. On an appeal to the Commissioner of Indian Affairs that decision was reversed, and a further appeal carried the contest before the Secretary of the Interior. Knight's contest was held in abeyance, before the Commissioner to the Five Civilized Tribes, awaiting the outcome of Twist's. In this situation negotiations were had between representatives of Twist and Knight and the parents of Eva Waters, acting in her behalf, looking to a withdrawal of her selection, subject to the approval of the Secretary of the Interior, in order that there might be no obstacle to the allowance of the later selections of Twist and Knight. The negotiations resulted in an application to the Secretary for permission to effect such an adjustment of the two contests on the payment, for the use of the minor, of an adequate consideration for her potential interest in the land. After a hearing on this application the Secretary, on May 10, 1909, rendered a decision approving the proposed adjustment on condition that there be paid, for the use of the minor, $10,000 for her claim to the 20 acres in Twist's contest and $15,000 for her claim to the 30 acres in Knight's. The Secretary then sent to the Commissioner to the Five Civilized Tribes the following telegram: "Lands in Twist and Knight cases against Waters will be awarded to Twist and Knight respectively upon payment of twenty-five thousand dollars for use of minor Waters, contestants given including fifteenth to make payment. . . . Prepare deeds to respective contestants and have them executed and forwarded here for approval. Report promptly by wire." Within the time named the $25,000 was paid to the Commissioner, for the use of the minor, and thereupon patents to Twist and Knight were executed by the principal chief

of the Cherokee Nation and were forwarded by the Commissioner to the Secretary for his approval.

Under the regulations governing the institution and disposition of contests over allotments a party was accorded thirty days after a decision by the Secretary within which to apply for a rehearing. Within this period the parents of Eva Waters, acting in her behalf, applied to the Secretary for a rehearing of the matter covered by his decision of May 10, 1909, it being asserted in that connection that her potential interest was worth much more than the sum named in the decision, and that her parents' consent to the adjustment had been grounded on inaccurate and misleading information. The application was entertained, and, after a hearing thereon in which Twist and Knight participated, the Secretary rendered a further decision vacating the former one and disapproving the proposed adjustment, on the ground that the consideration which the minor was to receive was not at all adequate. The Secretary also ruled that both contests should be considered and disposed of on their merits and that the $25,000 should be returned. The money was not actually repaid, but this may have been because those who paid it were as yet unwilling to take it back. In consequence of his later decision the Secretary declined to approve the patents executed by the principal chief, or to permit them to be recorded or delivered.

On July 16, 1909, Knight's contest was called for hearing before the Commissioner to the Five Civilized Tribes in pursuance of the Secretary's direction that it be considered and disposed of on its merits, and Knight then appeared and protested against any further steps therein, insisting that in virtue of the matters here recited he had acquired a fixed and absolute right to the patent and that the administrative officers were without authority to proceed with the contest. The protest was disregarded, and on the same day he applied to the Supreme

Court of the District of Columbia for a writ of mandamus, as before indicated, to compel the Secretary of the Interior to deliver to him the patent for the 30 acres and to perform any other acts necessary to clothe him with the full legal title.

The question for decision is, whether in the circumstances the Secretary was without authority to reconsider and vacate his decision of May 10, 1909, approving the proposed adjustment of the relator's contest, whereby the minor, Eva Waters, was to withdraw her selection in consideration of the payment by the relator of $15,000 for her use. It is frankly conceded by counsel for the relator, and rightly so, that the adjustment could not have been made without the Secretary's approval, which means that he possessed a power of decision in the matter. The act of July 1, 1902, 32 Stat. 725, c. 1375, under which the Cherokee lands were being allotted in severalty, shows that Congress was solicitous not only that every member of the tribe should receive an allotment (§§ 11, 16), but that the rights of minors should be specially asserted and conserved (§ 70). And that it was intended to clothe the Secretary with comprehensive powers is shown in the provisions that all matters relating to allotments should be determined under his direction (§ 22) and that all things necessary to carry into effect the provisions of the act, not otherwise therein specifically provided for, should be done under his authority and direction (§ 65). The question therefore is reduced to this: Was his power of decision exhausted when on May 10, 1909, he approved the proposed adjustment? To this there can be only a negative answer. That decision was not final, but interlocutory. In terms it shows that the patent was not to be effective or delivered until he approved it, and the act of 1902 declared that it must have his approval (§ 59). Not only so, but, no statutory provision opposing, effect was to be given to the regulation providing for rehearings

and allowing thirty days within which to apply therefor. Thus, it was as if the decision itself had made provision for a rehearing. Proper regard must also be had for the fact that the act of April 26, 1906, 34 Stat. 137, c. 1876, § 5, expressly contemplated that the title should not pass until the patent was recorded in the office of the Commissioner to the Five Civilized Tribes. In such a case we perceive no reason for departing from the rule applicable to kindred proceedings in the Land Department, which is well stated in the following excerpts from the opinion in *Brown* v. *Hitchcock*, 173 U. S. 473, 476–478:

"Until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the land department. In *United States* v. *Schurz*, 102 U. S. 378, 396, which was an application for a mandamus to compel the delivery of a patent, it was said: 'Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the Government conveyed to the citizen. This court has, with a strong hand, upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet *in fieri*, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere.'

\*          \*          \*          \*          \*          \*          \*          \*

"We do not mean to say that cases may not arise in which a party is justified in coming into the courts of the District to assert his rights as against a proceeding in the land department or when the department refuses to act at all. *United States* v. *Schurz, supra,* and *Noble* v. *Union River Logging Railroad Co.*, 147 U. S. 165, are illustrative of these exceptional cases.

"Neither do we affirm that the administrative right of the departments in reference to proceedings before them justifies action without notice to parties interested, any

more than the power of a court to determine legal and equitable rights permits action without notice to parties interested.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"But what we do affirm and reiterate is that power is vested in the Departments to determine all questions of equitable right or title, upon proper notice to the parties interested, and that the courts must, as a general rule, be resorted to only when the legal title has passed from the Government."

As entirely apposite, we repeat the statement in *New Orleans* v. *Paine*, 147 U. S. 261, 266: "Until the matter is closed by final action, the proceedings of an officer of a department are as much open to review or reversal by himself, or his successor, as are the interlocutory decrees of a court open to review upon the final hearing."

Inasmuch as the decision of the Secretary revoking his prior approval of the proposed adjustment was not arbitrary or capricious, but was given after a hearing and in the exercise of a judgment and discretion confided to him by law, it cannot be reviewed, or he be compelled to retract it, by mandamus. *Ness* v. *Fisher*, 223 U. S. 683.

The decisions in *Garfield* v. *Goldsby*, 211 U. S. 249, and *Ballinger* v. *Frost*, 216 U. S. 240, are not in conflict with the views here expressed. In the former the writ was awarded to compel the respondent to erase and disregard an entry which he arbitrarily and without notice had caused to be made upon a public record, thereby beclouding the relator's right to an Indian allotment. In the latter the writ was awarded to compel the delivery of a patent which was withheld solely through the unauthorized action of the Secretary in entertaining and sustaining a proceeding in the nature of a contest after the expiration of the time limited by statute for instituting such a proceeding.

*Judgment affirmed.*