## FIXICO et al. v. FRANK.

No. 13965—Opinion Filed April 14, 1925.

(Syllabus.)

**Indians—Lands—Wrongful Cancellation of Patent and Issuance to Another Party.**

Where a patent to land has been executed by the Principal Chief of the Creek Nation and thereafter approved by the Secretary of the Interior and by him transmitted to the office of the Dawes Commission for record, and said patent was duly recorded according to section 23 of the Original Creek Treaty, Act of March 1, 1901, 31 Stat. 861, which provides, "All deeds when so executed and approved shall be filed in the office of the Dawes Commission and there recorded without expense to the grantee and such record shall have like effect as other public records," and thereafter, the Secretary of the Interior, upon notice and hearing, struck the name of the allottee from the rolls and canceled the patent, and thereafter issued a patent to another member of the Creek Nation, such attempted cancellation is without authority and the patent thereafter issued confers no title upon the party receiving the subsequent patent to said land.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Nocus Fixico and another against Leah Frank. Judgment for defendant, and plaintiffs bring error. Reversed, with directions.

Linebaugh & Pinson, for plaintiffs in error.

J. B. Dudley, C. W. Brewer, and Phillips Douglas, for defendant in error.

LESTER, J. The parties to this action appear as in the court below. However, since this cause was filed in the Supreme court, one of the plaintiffs, Nocus Fixico, died and the cause, by agreement, is revived in the name of Rhina Bear and California Fixico, as plaintiffs in error.

Plaintiffs in error, Nocus Fixico and Rhina Bear, initiated this action by filing their petition in the district court of Okfuskee county, joining two causes of action: (1) For the possession of 160 acres of land in Okfuskee county, described as the west half of the northwest quarter of section 24, township 11 north, range 8 east, and the east half of the southwest quarter of section 14, township 11 north, range 8; (2) and for quieting the title in them.

The allegations of the petition are that Washey Fixico was a full-blood Creek Indian, who died intestate in the year 1899, and that the plaintiffs are the heirs of said decedent. That there was allotted and patented to the heirs of Washey Fixico, deceased, the land above described. It is alleged that, among others, certain deeds, not material to this appeal, are clouds upon the title; M. B. Flesher, one of the defendants,

having disclaimed, and the action having been dismissed as to H. G. Malot, the other defendant. The deeds involved in this appeal are a so-called homestead deed and an allotment deed to the defendant in error, Leah Frank, the said homestead and allotment deeds being subsequent in point of time to the patent to the heirs of Washey Fixico, the Washey Fixico patent having been approved by the Secretary of the Interior on April 25, 1903, and the patent to the same land having been executed to the defendant, Leah Frank, on the 24th day of May, 1907.

C. W. Brewer was appointed guardian ad litem of the defendant, Leah Frank, who was at that time a minor, but who attained her majority prior to trial. The guardian ad litem denied the allegations of plaintiffs' petition and adopted the allegations of the answer and cross-petition of Leah Frank, which was filed by the guardian, Tingo Frank. The answer of Leah Frank admits that the land involved in this action was allotted to the heirs of Washey Fixico, and alleges that thereafter proceedings were had by the Secretary of the Interior of the United States, after notice had been given, and a hearing had; that the name of Washey Fixico was stricken from the rolls, and the allotment as well as the deeds issued to his heirs for said lands, was canceled, and that the name of Washey Fixico does not appear upon the final rolls of the Creek Nation. That the action of the Secretary of the Interior was not appealed from and became final and binding on the parties; that the allotment deeds were never delivered to the plaintiffs, and that none of the heirs of Washey Fixico were ever at any time in possession of the land involved in the action, and that no title passed to the heirs by virtue of the allotment and the allotment deed. A cross-petition seeking the quieting of her title is a part of the answer of Leah Frank.

By reply the plaintiffs denied the affirmative allegations of the answer and the allegations of the cross-petition.

By separate amended answer and cross-petition, the defendant, Leah Frank, further pleaded the statutes of limitation of Arkansas. This plea was abandoned at the trial. To this pleading, the plaintiffs filed a reply, setting out that the plaintiffs are full-blood Indians, and that the statute of limitations does not apply to them. Otherwise, the amended answer and cross-petition do not change the issues.

At the trial of the cause, all parties waived a jury and agreed that the case be submitted to the court. It was agreed that plaintiffs are heirs of Washey Fixico, the deceased allottee.

The record discloses, without dispute, that Washey Fixico was enrolled by the Dawes Commission, as a full-blood Indian, on the theory that he was living on April 1, 1899, under section 28 of the Original Creek Agreement of March 1, 1901, and the enrollment was approved by the Secretary of the Interior under date of March 28, 1902. On March 12, 1903, the Principal Chief of the Creek Nation executed a patent running to the heirs of said Washey Fixico, covering the lands in controversy here, which patent was thereafter, and on April 25, 1903, approved by the Secretary of the Interior. This patent, together with two letters from the Secretary of the Interior to the Commissioner to the Five Civilized Tribes, bearing date of August 5, 1905, and October 2, 1905, respectively, appear in the record as exhibits to the petition of plaintiffs in error. A certified copy of this patent was introduced in evidence and appears in the record at pages 86 to 88, inclusive, from which it appears that said patent was filed for record in the office of the Commissioners to the Five Civilized Tribes on May 9, 1903.

In July, 1903, an application was made by the Creek Nation to reopen the question of the enrollment of the said Washey Fixico, on the ground that he was not living on April 1, 1899. Following this, there was certain correspondence back and forth between the Commission to the Five Civilized Tribes, the National Attorney for the Tribe, and the Secretary of the Interior, as a result of which the Secretary, under date of October 22, 1903, ordered a rehearing of the application of said enrollment of the said Washey Fixico. Following this, hearings were had from time to time by the Commission, resulting in a finding under date of June 14, 1905, to the effect that said Washey Fixico was not living on April 1, 1899, and was, therefore, not entitled to enrollment as a member of the Tribe nor to any portion of the tribal lands, and recommending that the name of Washey Fixico be stricken from the rolls. Notice of hearing of the motion to reopen the enrollment was given, not only to the administrator of the estate of Washey Fixico, deceased, but to his heirs, including the plaintiffs in error herein, and they appeared before the Commission, both in person and by counsel.

On August 5, 1905, the Secretary of the Interior approved the recommendation of the

Commission and ordered the cancellation of the enrollment of Washey Fixico as a member of the Tribe. Notice of the action of the Secretary of the Interior was likewise served upon all interested parties. On August 23, 1905, the Commission enclosed the Washey Fixico patent to the Secretary of the Interior with a request for permission to cancel the same. Following this, and on October 31, 1905, the Commission returned the patent to the Secretary of the Interior and advised him that the Principal Chief had canceled his signature thereto.

The original patent remained in Washington until it was sent down to be used as evidence in this case, and Mr. Angell of the Commission had the original patent in his possession and testified with reference to the same, and said original patent appears in the record at pages 99 to 100. from which it appears that a portion of the name of the Principal Chief and the seal of the Tribe is stricken. Across the patent, as recorded, a certified copy of which was introduced in evidence by the plaintiffs in error, appear these words: "Cancelled. Name stricken from rolls. Departmental letter October 2, 1905. Commissioner." On the original patent, stamped on the face thereof, appear these words: "Canceled. Name stricken from rolls. Departmental letter October 2, 1905. Commissioner."

Following the cancellation of the enrollment and patent, and on May 24, 1907, the land in controversy was patented to the defendant in error, a full-blood Creek Indian, who is in possession of said land. claiming to be the owner thereof by virtue of said patents. The plaintiffs in error are heirs of Washey Fixico, deceased, and as such claim to be the owners of the land in controversy under and by virtue of the patent of March 12, 1903. They were duly enrolled as members of the Creek Nation.

The trial court made findings. finding the issues in favor of the defendant, Leah Frank, and against the plaintiffs; that the defendant, Leah Frank, is the absolute owner and in possession of the real estate and premises involved, and entitled to have her title to the same quieted, and rendered judgment and decree accordingly.

A timely motion for new trial was made, which was overruled by the trial court, and from this judgment overruling the same, the plaintiffs have appealed to this court.

Counsel contend that the sole question for our determination is, "Had the Secretary of the Interior on October 2, 1905, the right, upon notice and hearing, to cancel the patent issued to the heirs of Washey Fixico after the same had been delivered in the office of the Dawes Commission, as provided by the Act of March 1, 1901, 31 Stat. 861?"

Counsel for plaintiffs in error contend that the Secretary of the Interior was without authority to cancel the enrollment and patent of Washey Fixico, and in support of their contention argue four propositions, which are as follows:

"(a) There is no congressional authority, express or implied, for such action, and no precedent therefor.

"(b) No court has power to set aside its own judgment without express authority therefor, after the judgment has been carried into effect.

"(c) The proceeding here was adversary, and the judgment could be set aside only by an attack in equity based on recognized equitable principles.

"(d) The Dawes Commission, a judicial tribunal, created for an express purpose, was vested with express powers. Any power beyond those expressed is inherent in courts in general, if existent at all, and still remains in the courts, though the authority of the Commission has terminated."

As shown by the record, a patent was prepared by the Dawes Commission and submitted to the Principal Chief of the Creek Nation, who duly executed the same. Thereafter the patent was transmitted to the Secretary of the Interior, and by him approved on April 25, 1903, and the patent was then returned to the Commission of the Five Civilized Tribes and filed for record on the 9th day of May, 1903, at 9 o'clock a. m., and duly recorded in "Creek Deed Record of Heirs", Book A, at page 139.

On May 24, 1907, the same land by the same procedure was patented to the defendant in error, Leah Frank. Under the first patent, the plaintiffs claim; under the second patent, the defendant claims.

As provided by section 23 of the Original Creek Treaty, Act of March 1, 1901, 31 St. L. 861—

"All deeds, when so executed and approved, shall be filed in the office of the Dawes Commission and there recorded without expense to the grantee and such record shall have like effect as other public records."

There is some contention over the fact as to whether the first patent in question was delivered to the Principal Chief of the Creek Nation after it was recorded, and we quote the following from C.-M. page 75:

"Q. Immediately after the execution and approval, of a patent and the recording of it in the office, you went to the Principal Chief and turned the patent over to him. A. At that time; yes, sir. Q. And he kept the book whereby he kept a receipt or indication in that book whether that patent was delivered? A. Yes, sir. Q. That was not a part of the record of the Dawes Commission? A. No, sir. Q. And the Principal Chief was not an officer of the Dawes Commission? A. No, sir. Q. He was not an employe of the United States? A. No, sir."

Counsel for plaintiffs and defendant submit a large number of authorities which discuss the right of the Secretary of the Interior to cancel enrollments and certificates of allotment. and after notice and hearing had thereon, but little authority is submitted upon the exact question at issue.

In the case of United States v. Wildcat, 244 U. S. 111, 61 L. Ed. 1024, the court said:

"This action was brought fourteen years after the enrollment of Thlocco and the allotment to him based on such enrollment should not be disturbed except for good and sufficient reasons.

"It is not contended by the government that the subsequent action of the Secretary in striking Thlocco's name from the rolls had the legal effect to accomplish that purpose. Such is the contention of the interveners. The testimony shows that Thlocco was enrolled by the Commission on May 24, 1901, that the allotment was made and the certificate therefor issued on June 30, 1902, and that patents were recorded in the office of the Commission on April 11, 1903, the allotment certificate issued in the name of Thlocco."

In the case of Duncan Townsite Co. v. Lane, 62 L. Ed. 308, the court said:

"The nature of the Choctaw-Chickasaw Agreement and the rights incident to enrollment and allotment have been frequently considered by this court. Enrollment confers rights which cannot be taken away without notice and opportunity to be heard. Garfield v. United States, 211 U. S. 249, 53 L. Ed. 168, 29 Sup. Ct. Rep. 62. Certificates of allotment, like receiver's receipts under the general land laws, entitle the holder to exclusive possession of the premises. Act of July 1. 1902. p 23 (32 Stat. at L. 641-644, chap. 1362) ; United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 337, 338, 50 L. Ed. 499, 505, 506, 26 Sup. Ct. Rep. 282. But enrollment and certificates may be canceled by the Secretary of the Interior for fraud or mistake (United States ex rel. Lowe v. Fisher, 223 U. S. 95, 56 L. Ed. 364, 32 Sup. Ct. Rep. 196), because, although the equitable title had passed (Michigan Land & Lumber Co. v. Rust, 168 U. S. 589, 593, 42 L. Ed. 591-592, 18 Sup. Ct. Rep. 208), the land remains subject to the supervisory power of the Land Department (United States ex rel. Knight v. Lane, 228 U. S. 6, 57 L. Ed. 709, 33 Sup. Ct. Rep. 407), until issue of the patent (United States v. Wildcat, 244 U. S. 111, 61 L. Ed. 1024, 37 Sup. Ct. Rep. 561), unless under the statute the power expires earlier by lapse of time (Ballinger v. United States, 216 [311] U. S. 240, 54 L. Ed. 464, 30 Sup. Ct. Rep. 338)."

In the case of Brown v. Hitchcock, 173 U. S. 473, the court said:

"But what we do affirm and reiterate is that power is vested in the departments to determine all questions of equitable right or title, upon proper notice to the parties interested, and that the courts must, as a general rule, be resorted to only when the legal title has passed from the Government. When it has passed, the litigation will proceed, as it generally ought to proceed, in the locality where the property is situate, and not here, where the administrative functions of the government are carried on."

A portion of the syllabus in said case is as follows:

"* * * Until the legal title to land passes from the government, inquiry as to all equitable rights comes within the cognizance of the land department."

In the case of Richard A. Ballinger v. United States, Ex Relatione Belle Frost, 54 L. Ed. 464. the court, speaking of the power of the Secretary of the Interior, said:

"The power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and the right to a patent therefor, and can no more be deprived of it by order of the Commissioner then he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it."

In the case of Wallace v. Adams, 143 Fed. 716, the court, speaking of the construction and effect of a patent, said:

"The jurisdiction of the Dawes Commission, under the Secretary of the Interior, and the effect of their action in the allotment of lands of the Choctaw and Chickasaw Nations, are the same as the jurisdiction and the effect of the action of the Land Department of the United States in the disposition by patent of the public lands within its control."

In Emblen v. Lincoln Land Co., 46 L. Ed. 736, the Supreme Court of the United States held:

"The determination of the contest between the claimants of conflicting rights of pre-emption as well as the issue of a patent to either. was within the jurisdiction and authority of the Land Department and cannot be controlled or restrained by mandamus or injunction. After the patent had been issued, the original contest is no longer within the jurisdiction of the Land Department. The patent conveys the legal title to the patentee and cannot be revoked or set aside except upon legal proceedings instituted in behalf of the United States. * * *

"The jurisdiction of the Land Department ceased with the issuance of the patent. * * *"

In Iron Silver Mining Co. v. Campbell, 34 L. Ed. 155, it is said:

"The Government of the United States, having issued a patent, cannot, by the authority of its own officers, invalidate that patent by the issuing of a second one for the same property." (Syllabus, par. 1.)

"One who has obtained a patent from the government cannot be called to answer in regard to that patent before the officers of the Land Department. The only way in which his title can be impeached is by suit." (Syllabus, par. 5.)

In Michigan Land & Lumber Co. v. Rust, 42 L. Ed. 591, it is said:

"The power of the Land Department to inquire into the extent and validity of rights claimed against the government does not cease until the legal title has passed." (Syllabus, par. 2.)

"Where an act of Congress grants lands and the granting act specifically provides for the issue of a patent. the rule is that the legal title remains in the government until the issue of the patent.

"Until the consummation of the title by a grant, the person who acquires an equity holds a right subject to examination.—Miller v. Kerr, 20 U. S. (5 L. Ed. 381.) After the issue of the patent, the matter becomes subject to inquiry only in the courts and by judicial proceedings." (Citing cases.)

In Bicknell v. Comstock, 28 L. Ed. 962, it is said:

"One of the facts admitted in the case stated is this: 'It is admitted that on the first day of May, 1869, a patent in due form was executed by the President of the United States, conveying to said Bicknell said lots 3 and 4, which patent was duly recorded in the General Land Office on the same day at Washington, D. C., and thereupon the original was transmitted to the United States Land Office at Fort Dodge, Iowa. for said Bicknell.'

"In June, 1878, the Commissioner of the General Land Office ordered a return of this patent to his office, and thereupon tore off the seals and erased the President's name from said patent and mutilated the record thereof in the General Land Office, all without the consent and against the protests of the grantees of the said Bicknell.

"That this action was utterly nugatory and left the patent of 1869 to Bicknell in as full force as if no such attempt to destroy or nullify it had been made, is a necessary inference from the principle established by the court in the case of McBride v. Schurz, 102 U. S. 378. That principle is that when the patent has been executed by the President and recorded in the General Land Office, all power of the executive department over it has ceased."

As will be observed, section 23 of the Original Creek Treaty provides:

"All deeds when so executed and approved shall be filed in the office of the Dawes Commission, and there recorded without expenses to the grantee, and such record shall have like effect as other public records."

The purpose of this provision is plain. It was desirous that there be an office in which the records should be kept, that the title to the land by patent to the grantee would be preserved by record thereof. It was a convenience to the grantee; it was provided that the patent should be recorded without expense to the grantee;' it was further provided that such record should have like effect as other public records. Clearly when the patent was signed by the Principal Chief of the Creek Nation duly approved by the Secretary of the Interior, transmitted by him to the proper office to be recorded and then filed for record, the Secretary of the Interior thereupon lost jurisdiction as an officer of the government to disturb the effect or grant of such patent, and an attempted cancellation thereof was without authority.

It is insisted by defendant in error that by virtue of section 5 of the Act of April 26, 1906 (34 Stat. 137), (Brief of defendant, pp. 27, 28):

"All patents or deeds to allottees or other conveyances affecting lands of any of said tribes shall be recorded in the office of the Commissioner to the Five Civilized Tribes, and when so recorded shall convey legal title, and shall be delivered under the direction of the Secretary of the Interior to the party entitled to receive the same."

"From this it is clear that the Department was of the opinion that the mere recording of the patent in the office of the Commission. as provided for in the treaty, did not pass

legal title. Congress was evidently of the same opinion, or else it would not have provided in this section of the Act of April 26, 1906, that the mere recording in the office of the Commissioner shall convey legal title.

"If the public land laws with reference to the recording of patents from the government applied and governed the patent to Indian lands of the Five Civilized Tribes, why did Congress pass this act? The Department construction is entitled to great weight by this court."

We cannot agree with the conclusion of the defendant that legal title was not passed after the patent was so recorded and the Secretary of the Interior failed to deliver the patent " to the party entitled to receive the same," but on the other hand hold that when the patent was delivered by the Secretary of the Interior to be recorded legal title then passed to the grantee, and whatever rights the government may have had, it was subject to judicial determination by the court.

For the reasons herein stated, the cause is reversed, with directions to quiet title to said land in the plaintiffs and for possession of same and for further proceedings.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON. HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 31 C. J. p. 512, § 74 (1926 Anno).